IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Valerie E. Trissel**<br>3421 Limerick Road<br>Clyde, Ohio 43410<br><br>          Plaintiff,<br>vs.<br><br>**Stevens Engineers and Constructors, Inc.**<br>7850 Freeway Road, Suite 100<br>Cleveland, Ohio 44130<br><br>          Defendant. | Case Number: 1:25-cv-02278<br><br>Judge:<br><br>Magistrate: |

## COMPLAINT; DEMAND FOR JURY TRIAL

1. Plaintiff demands a trial by jury on all issues pursuant to Fed. R. Civ. P. 38 and LR 38.1.

2. This case is brought to redress Defendant Stevens Engineers and Constructors, Inc.'s ("Stevens Engineers") actions, and more importantly, unlawful treatment of Plaintiff Valerie E. Trissel ("Trissel") while Trissel was employed by the Defendant. Stevens Engineers is a successful engineering and construction company that participated in a substantial project in Arkansas. Through mutual union connections, Defendant hired Plaintiff, a female ironworker, to work for the Defendant as part of this project. This shouldn't have been a problem. It quickly became one. The antagonist in this saga is Gary Wharton ("Wharton"), a project manager for Stevens Engineers, who in reality has an ownership interest in the company. Wharton regularly referred to African-American

1

employees as "field niggers" or "house niggers," based on whether the employee works in an office or not. Significantly, Wharton was hostile to Trissel from the moment she arrived. Unfortunately, the hostility was only the beginning. Trissel was paid according to Ohio Local 55 union rates, which were lower than Illinois Local 392 union rates that her peer was paid. If this was not enough, at least two male employees from the same Ohio Local 55 chapter as Trissel were also paid the higher Local 392 rates. Due to the rate discrepancy, Trissel may actually have earned less per hour in a higher position than her Ohio Local 55 peers earned in lower positions. In the course of her employment, Triseel was subjected to, among other incidents, Wharton burning her female ironworkers calendar, regularly calling her "The V," and asking about "dining at the Y" in relation to Trissel.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Count I through Count III pursuant to 28 U.S.C. § 1331.

4. Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in the Northern District of Ohio and is the only Defendant. Venue is also proper in this Court under 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5. Plaintiff Valerie E. Trissel ("Trissel") was an employee of Defendant Stevens Engineers and Constructors, Inc. ("Stevens Engineers").

6. Stevens Engineers is an Ohio corporation that provides design/build services in a variety of industries, including metals, oil and gas, energy and power, petrochemical, chemical, automotive and manufacturing. Its corporate headquarters is located in Middleburg

Heights. Ohio. Its principal place of business is Ohio pursuant to *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181 (2010) because its officers direct, control, and coordinate its activities from Ohio.

## FACTS

7. Plaintiff Trissel was employed by Defendant Stevens Engineers beginning on or about July 17, 2023.

8. Trissel's gender is female.

9. Stevens Engineers terminated Trissel's employment on or about March 14, 2024.

10. During the entire period of her employment with Stevens Engineers, Trissel worked on the Big River Steel Project (the "Project") located in Osceola, Arkansas.

11. Upon information and belief, Stevens Engineers has completed its work on the Project in Arkansas.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT, 29 U.S.C. § 206(d)

12. This Count of the Complaint arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended by the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Trissel brings this action as set out in this Count of the Complaint to recover wages due her under the Fair Labor Standards Act, and an additional equal amount as liquidated damages.

13. Written consent, as required by 29 U.S.C. § 216(b), is attached to this Complaint as Exhibit A.

14. Trissel, during all relevant times, as an employee of Stevens Engineers, was engaged in commerce and/or in the production of goods for commerce, and/or was employed by an

enterprise engaged in commerce and/or in the production of goods for commerce, within the meaning of the Fair Labor Standards Act of 1938 (the "Act"), 29 U.S.C. § 201 et seq.

15. Stevens Engineers, during all relevant times, was engaged in the performance of related activities through unified operation or common control for a common business purpose and it is an enterprise within the meaning of Section 3(i) of the Act. The annual gross volume of sales of such enterprise is not less than $500,000.00. Stevens Engineers has, during all relevant times, many employees engaged in commerce, and it is and at all relevant times has been, an establishment of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the Act.

16. During all relevant times Trissel was qualified for the general foreman position and performed her job well.

17. Stevens Engineers, during all relevant times, repeatedly and willfully violated Section 6(d) of the Act by discriminating between employees on the basis of sex by paying wages to Trissel at rates less than the rates at which it paid to general foreman Louis Cherry ("Cherry"), and maybe other male employees in the same establishment, for equal work on jobs the performance of which required equal skill, effort and responsibility, and which were performed under similar working conditions. Furthermore, journeyman Francisco Flores ("Flores") and journeyman Myles Meyers ("Meyers") may have been paid more than Trissel despite being in a lower position than Trissel.

18. Trissel believed that she was hired as a general foreman, but was initially paid as a journeyman, before being paid as a general foreman.

4

19. Trissel acted as a general foreman and performed general foreman duties while being paid as a journeyman.

20. A general foremen supervises foreman and a foreman supervises journeymen.

21. At all times pertinent, Trissel was paid based on the Iron Workers Local 55 rate sheet in Toledo, Ohio. This rate sheet states that journeyman shall be paid $34.25 per hour and general foreman shall be paid $41.10 per hour.

22. Other employees in both equivalent and lower positions were paid from a higher rate sheet based on Local 392 in East St. Louis, Illinois rates.

23. Upon information and belief at least some of the employees paid from the higher rate sheet were not from the Local 392 chapter that their pay rate was based on.

24. Cherry was employed in the same general foreman role as Trissel. Both Cherry and Trissel supervised other employees.

25. Cherry was paid from a different rate sheet that is higher than the Iron Workers Local 55 rate sheet. Specifically, Cherry was paid a rate of at least $43.80 per hour as a general foreman—a higher rate than Trissel despite performing the same work in the same position.

26. Both Myles and Flores were employed in positions lower than general foreman.

27. Both Myles and Flores are from the Iron Workers Local 55, just as Trissel was.

28. Both Myles and Flores were paid from a different rate sheet that is higher than the Iron Workers Local 55 rate sheet. Upon information and belief, with some additional additives

such as a $2 bonus for night work, the result may have been that both Myles and Flores made more than Trissel per hour, despite being in lower positions than Trissel.

29. Trissel brought this issue to the attention of general supervisor Cliff Hemlinger ("Hemlinger") for the first time in September 2024.

30. Trissel complained to Wharton and Hemlinger that she was being paid less than what she should be paid as a general foreman.

31. Wharton took a photo of Trissel and Cherry's paychecks next to each other along with his middle finger.

## COUNT II
## SEX DISCRIMINATION/SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

32. Trissel repeats, reiterates and realleges all allegations contained in paragraphs 1 through 31 of this Complaint as if more fully set out herein.

33. Stevens Engineers terminated Trissel's employment, at least in material part, due to her gender.

34. In addition to her termination, which occurred at least in material part due to her gender, Trissel was also subjected to additional sex discrimination, including sexual harassment and different terms and conditions of employment, due to her gender. This includes but is not limited to the following:

   a. Not being welcomed by Wharton when he saw Trissel for the first time. Specifically, Warton would not talk to Trissel. Cherry told Trissel that she was not wanted and that Wharton did not care for women on site. Wharton not wanting to

    talk to Trissel was done as a way to illustrate disrespect and negative attitude regarding Trissel, a woman, being on the job, especially as a general foreman.

b. Wharton called Trissel a secretary several times starting in December 2023, in a manner to illustrate his disrespect and negative attitude regarding Trissel, a woman, being on the job, especially as a general foreman.

c. Trissel was paid less than Cherry, a male, who also held the position of general foreman on the Project. Upon information and belief, Trissel was also paid less than male employees who worked in lower positions than general foreman, despite being from the same union as Trissel.

d. Wharton on many occasions referred to Trissel on the job site as the "The V." "The V" was in reference both to Trissel's first name of Valerie and carried with it an equivalent sexual connotation.

e. Wharton made sexual gestures with his pointed finger and middle finger in front of his mouth in a "V," gesturing cunnilingus with his tongue between his fingers in 2023.

f. Wharton objected to Trissel using her phone during her break time, despite not raising similar objections regarding male employees. Cell phone service at the Project location was poor outside of the field office, often leading employees to use their phones when the sporadic cell service was working, which wasn't often.

g. In lieu of the poor cell phone service at the Project location walkie talkies were often used. In order for cell phones to work, Wi-Fi was often necessary outside of field office. Wharton directly gave male day structural foreman Merllen Massey

    the Wi-Fi password in March 2024, but retracted his phone and refused to give Trissel the Wi-Fi password at the same time. In response, Cherry material said "aren't you going to give it to her [Trissel]."

h. On or about fall 2023, Trissel observed Wharton asking Cherry about "dining at the Y" in the course of discussing going out to eat dinner, insinuating the act of performing oral sex with Trissel. Cherry's son was also present.

i. Trissel complained to Savo Micic ("Micic"), who held the corporate safety position with Stevens Engineers, regarding Wharton's discriminatory behavior toward Trissel and sexual harassing conduct.

j. Trissel complained on various occasions to Warren Brown, the head of corporate safety for Stevens Engineers, regarding the sex discrimination/sexual harassment that she was being subjected to by Wharton.

k. Tiffany Ison, a journeyman hired after Trissel materially told Trissel that Wharton had it out for Trissel.

l. Journeyman Trent Dingwell and Trissel witnessed Wharton burn a female ironworkers' calendar that belonged to Trissel after the New Year in 2024. Before burning the calendar, Wharton drew a penis on the mouth of a female in the ironworkers' calendar. Warton laughed about this act.

m. Wharton materially told operations safety manager Warren Brown that women need to know their place. This occurred in early 2024.

n. Wharton more than once intimidated Trissel by hovering over her shoulder. He would closely watch Trissel without hardly speaking to her.

    o. Illustrating his general dislike of women on the job site, Trissel heard Wharton call Michelle Hamilton a "rat face" several times. Trissel also heard Wharton call Janice Neal, a female foreman at the job site, a "dimwit," an "idiot," and callously accused her of killing her ex-husband. Trissel also heard Wharton call Di-asha Shoemaker and Pamela Manora, who were female employees on the job site, as "field niggers" because they worked outside the office.

    p. On another occasion in early 2024, Wharton told Trissel that she has gonorrhea during a discussion about scheduling.

    q. When speaking to Cherry, Wharton referred to Trissel as "the golden vagina" and "the golden V."

35. On March 14, 2024, Wharton told Cherry, referring to Trissel, "she's gone, I want her out of here." Cherry replied that it was a mistake to fire Trissel because she was doing a good job. At this point Cherry became angry at Cherry for sticking up for Trissel and sarcastically said to Cherry that "your check is in the office too!"

36. Trissel suffered and continues to suffer emotional distress, suffering, inconvenience, and mental anguish, as a result of Stevens Engineers' conduct through its employees, supervisors, managers, and other officials.

37. Stevens Engineers–through its employees, supervisors, managers, and other officials–acted maliciously.

38. The harassment/sexual harassment/hostile work environment/terms and conditions of employment based on sex was sufficiently severe or pervasive to alter the terms and conditions of Trissel's employment.

39. Trissel filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about March 25, 2024. A copy of said Charge of Discrimination is attached to this Complaint as Exhibit B and is made part of it.

40. The EEOC issued its Determination regarding said Charge of Discrimination on November 21, 2024. A copy of said Determination is attached to this Complaint as Exhibit C and is made part of it.

41. The EEOC issued Trissel a right to sue letter on July 24, 2025. A copy of said letter is attached to this Complaint as Exhibit D and is made part of it.

## COUNT III
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHT ACT OF 1964

42. Trissel repeats, reiterates and realleges all allegations contained in paragraphs 1 through 41 of this Complaint as if more fully set out herein

43. Stevens Engineers terminated Trissel's employment, at least in material part, due to her complaining of sex discrimination/sexual harassment.

## RELIEF REQUESTED

44. As to Count I,

    a. Stevens Engineers pay Trissel an amount equal to the difference between the wages actually received and the wages paid to male employees performing equal work within the meaning of Section 6(d) of the Act and interest thereon together with an additional equal amount as liquidated damages;

    b. Reasonable attorney's fees;

    c. Costs;

    d. Prejudgment interest; and

    e. Such other relief as this Court deems just and proper.

45. As to Count II,

    a. Trissel be reinstated to a general foreman position with full restoration of seniority, and pay and benefits, or in the alternative reasonable front pay;

    b. Full back pay;

    c. Compensatory damages to the maximum amount allowed by law;

    d. Punitive damages to the maximum amount allowed by law;

    e. Reasonable attorney's fees;

    f. Prejudgment interest, post-judgment interest, costs, and expenses; and

    g. Such other relief as this Court deems just and proper.

46. As to Count III,

    a. Trissel be reinstated to a general foreman position with full restoration of seniority, and pay and benefits, or in the alternative reasonable front pay;

    b. Full back pay;

    c. Compensatory damages to the maximum amount allowed by law;

    d. Punitive damages to the maximum amount allowed by law;

    e. Reasonable attorney's fees;

    f. Prejudgment interest, post-judgment interest, costs, and expenses; and

    g. Such other relief as this Court deems just and proper.

WHEREFORE, Plaintiff respectfully request that this Court enter a judgment with the relief requested.

Dated: October 22, 2025

                                            Respectfully submitted,

**Joseph Sobecki**
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Direct: (419) 283-9282
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: joseph@josephsobecki.com
Bar Number: FL1030989
*Counsel for Plaintiff, Valerie E. Trissel*

*/s/ Thomas A. Sobecki*
**Thomas A. Sobecki (0005210)**
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Office: (419) 242-9908
Facsimile: (419) 242-9937
Email: tsobecki@tomsobecki.com
*Counsel for Plaintiff, Valerie E. Trissel*